# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**PANHANDLE CLEANING**
**AND RESTORATION, INC.**
**and MASTER DRY LLC**

      Plaintiffs,

v.                                          **CIVIL ACTION NO.: 3:17-CV-117**
                                                               **(GROH)**

**NATIONWIDE MUTUAL INSURANCE COMPANY;**
**ALLSTATE INSURANCE COMPANY; STATE FARM**
**GENERAL INSURANCE COMPANY; LIBERTY MUTUAL**
**INSURANCE COMPANY; SAFECO INSURANCE COMPANY**
**OF AMERICA; PENNSYLVANIA NATIONAL MUTUAL**
**CASUALTY INSURANCE COMPANY; AMICA MUTUAL**
**INSURANCE COMPANY; USAA CASUALTY INSURANCE**
**COMPANY; MOTORISTS MUTUAL INSURANCE COMPANY;**
**CUMBERLAND INSURANCE COMPANY, INC.;**
**and WESTFIELD INSURANCE COMPANY.**

      Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS

Currently before the Court is the Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. ECF No. 68. Therein, all of the Defendants in this civil action seek to dismiss both claims in Plaintiffs' Amended Complaint based upon several grounds. Plaintiffs filed their Response in Opposition and aver that their claims are properly stated before this Court. ECF No. 81. Defendants filed a Reply [ECF No. 87] and Supplemental Reply [ECF No. 89] to Plaintiffs' Response. Having reviewed all of the filings and considering the applicable legal standards and precedent in this matter, Plaintiffs' amended complaint must be dismissed.

## I. BACKGROUND

Master Dry and Panhandle Cleaning and Restoration ("Plaintiffs") aver that they provide "disaster recovery services" to clients in West Virginia. See ECF No. 53 at 6. Plaintiffs named thirteen separate insurance companies ("Defendants") and allege that they "engaged in a process of steering policy holders exclusively to contractors on their preferred provider lists[,]" which excluded Plaintiffs because they were not on the list. Id. at 7. As a result, Plaintiffs seek damages and declaratory relief pursuant to two counts: tortious interference with business relations and the West Virginia antitrust act.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff and must view the allegations in a light most favorable to the plaintiff. See Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). But a complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To that end, Federal Rule of Civil Procedure 8 articulates a pleading standard which "does not require detailed factual allegations, but . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

A complaint that offers "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. (citation and internal quotation marks omitted). Likewise, a complaint that tenders only "naked assertion[s] devoid of further factual enhancement" does not suffice. Id. (alteration in original) (citation and internal quotation marks omitted). A party is required to articulate facts that, when accepted as true, "show" he is plausibly entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). When reviewing a complaint's sufficiency under Rule 12(b)(6), a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

### III. APPLICABLE LEGAL STANDARDS

Tortious interference with business interests has long been recognized as a cause of action in West Virginia courts. See, e.g., West Virginia Transp. Co. v. Standard Oil Co., 40 S.E. 591 (W. Va. 1902). "To establish a prima facie case of tortious interference, a plaintiff must show: (1) the existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." Syl. pt. 5, Hatfield v. Health Mgmt. Assocs. of W. Va., 672 S.E.2d 395, 398 (W. Va. 2008) (quoting Syl. pt. 2, Torbett v. Wheeling Dollar Sav. & Tr. Co., 314 S.E.2d 166, 167 (W.

3

Va. 1983)).

It is well settled that "in order for a party to be held liable for intentional interference with a contractual relationship, the party must be someone outside of the contractual relationship." Hatfield at 403. "Tortious interference claims lie only against a party that is a stranger to the relationship." Childers Oil Co., Inc. v. Exxon Corp., 960 F.2d 1265, 1271 (4th Cir. 1992) (citing Torbett). "A corporation cannot tortiously interfere with an agreement to which it is a party." Cotton v. Otis Elevator Co., 627 F. Supp. 519, 522 (S.D. W. Va. 1986). Moreover, an agent acting on behalf of his principal cannot be liable for tortious interference when his principal is a party to the contract. Id.

Although the Supreme Court of Appeals of West Virginia has yet to decide the issue squarely presented in the case *sub judice*, it has considered factually similar and analogous cases. See, e.g., Bryan v. Massachusetts Mut. Life Ins. Co., 364 S.E.2d 786 (W. Va. 1987) (finding that tortious interference claim meritless under Torbett because defendants had a financial interest in the business they were attempting to influence).

However, courts in other circuits have had an opportunity to consider facts nearly identical to the instant case. For example, the Eleventh Circuit has held that when an insurer "is obligated to indemnify its insureds for repair work done on its insureds' cars, [the insurer] is no stranger to the business relationship between [the plaintiff] and customers who are insured by [the insurer]." Gunder's Auto Center v. State Farm Mut. Auto Ins. Co., 422 F. App'x 819, 822 (11th Cir. 2011). Indeed, the court found that the insurer had a protectable interest in the relationship between their insureds and Gunder's. Id.

West Virginia's Antitrust Act is codified in West Virginia Code Section 47-18-3 and

was closely modeled after the Sherman Act, 15 United States Code Section 1. West Virginia's Legislature "has directed that where our state antitrust provisions track the Sherman Act's provisions, federal decisional law should be followed." Princeton Ins. Agency, Inc. v. Erie Ins. Co., 690 S.E.2d 587, 592 (W. Va. 2009) (citing W. Va. Code § 47-18-16; Syl. pt. 2, Gray v. Marshall Cty. Bd. of Educ., 367 S.E.2d 751 (W. Va. 1988)).

To establish a restraint of trade violation under the Sherman Act, a plaintiff must prove "'(1) concerted action by the defendants; (2) that produced anticompetitive effects within the relevant product and geographic markets; (3) that the concerted actions were illegal; and (4) that it was injured as a proximate result of the concerted action.'" Id. at 593 (quoting Matthews v. Lancaster Gen. Hosp., 87 F.3d 624, 639 (3d Cir. 1996)).

"To prove a violation of section one of the Sherman Act, 15 U.S.C. § 1, a plaintiff must show the existence of an agreement in the form of a contract, combination, or conspiracy that imposes an unreasonable restraint on trade." Oksanen v. Page Memorial Hosp., 945 F.2d 696, 702 (4th Cir. 1991). From the Supreme Court's earliest decisions, it has held that the Sherman Act was "intended to prohibit only *unreasonable* restraints of trade." Business Electronics Corp. v. Sharp Electronics Corp., 485 U.S. 717, 723 (1988) (emphasis added); see also, Standard Oil Co. of New Jersey v. United States, 221 U.S. 1 (1911).

The Supreme Court recently explained that "[r]estraints can be unreasonable in one of two ways." Ohio v. Am. Express Co., No. 16-1454, 2018 WL 3096305, at *6 (U.S. June 25, 2018). Horizontal restraints arise out of an agreement between competitors. The Supreme Court has explained that "[p]*er se* liability is reserved for only those agreements that are 'so plainly anticompetitive that no elaborate study of the industry is

5

needed to establish their illegality.'" Texaco Inc. v. Dagher, 547 U.S. 1, 5 (2006) (quoting National Soc. Of Prof'l Eng'rs v. United States, 435 U.S. 679, 692 (1978)). However, "[p]rice-fixing agreements between two or more competitors, otherwise known as horizontal price-fixing agreements, fall into the category of arrangements that are *per se* unlawful." Texaco, at 5. "Only where the economic effects of the restraint are clear, however, can a *per se* violation exist. Princeton Ins. Agency, 690 S.E.2d at 598-99.

Vertical restraints are "imposed by agreement between firms at different levels of distribution." Business Electronics, 485 U.S. at 730. Vertical restraints are judged under the "rule of reason." Am. Express, at *6; see Leegin Creative Leather Products, Inc. v. PSKS, Inc., 551 U.S. 877 (2007). "The rule of reason requires courts to conduct a fact-specific assessment of market power and market structure to assess the restraint's actual effect on competition [in order] to distinguish between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." Id. (internal citations and quotations omitted).

The unreasonableness of a restraint cannot be demonstrated by economic injury alone. "For example, the fact that a hospital's decision caused a disappointed physician to practice medicine elsewhere does not of itself constitute an antitrust injury." Oksanen, at 708 (citing Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 31 (1984). Indeed, "the reasonableness of a restraint is evaluated based on its impact on competition as a whole within the relevant market" to prevent trivializing antitrust laws. Id. (citing Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328 (1990)).

A plaintiff must also "prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the

defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or anticompetitive acts made possible by the violation." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). Succinctly, an antitrust injury is "the type of loss that the claimed violations of the antitrust laws would be likely to cause." Zenith Radio Corp. v. Hazeltine Research, 395 U.S. 100, 125 (1969)). Moreover, in the vast majority of antitrust claims, a plaintiff must "demonstrate under 'the rule of reason' approach specifically how the alleged conspiratorial conduct adversely affected competition in the relevant geographic market." Princeton Ins. Agency, 690 S.E.2d at 599.

"When confronted with a motion to dismiss a Sherman Act § 1 complaint pursuant to Fed. R. Civ. P. 12(b)(6)," the Fourth Circuit has explained that courts "must determine whether 'allegations covering all the elements that comprise the theory for relief have been stated as required.'" Estate Const. Co. v. Miller and Smith Holding Co., Inc., 14 F.3d 213, 220 (4th Cir. 1994) (quoting United States v. Employing Plasterers Ass'n, 347 U.S. 186, 189 (1954)). "Moreover, the allegations must be stated in terms that are neither vague nor conclusory." Id. at 221 (citing Reynolds Metals Co. v. Columbia Gas Sys. Co., Inc., 669 F. Supp. 744, 750 (E.D. Va. 1987)).

When a complaint merely alleges that "the defendants violated the antitrust laws as to a particular plaintiff and commodity[,]" it "is insufficient to survive a Rule 12(b)(6) motion." Id. (quoting Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 179 (3d Cir. 1988)). "Dismissal of a '"bare bones" allegation of antitrust conspiracy without any supporting facts is appropriate." Id. (quotations and citations omitted). The Fourth Circuit has cautioned against construing an antitrust complaint too liberally, noting that it

7

is not "proper to assume that plaintiffs can prove facts that they have not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged. Id. (quoting Associated Gen. Contractors v. California State Council of Carpenters, 459 U.S. 519, 526 (1983)).

### III. DISCUSSION

Upon thorough review and thoughtful consideration of the parties' arguments and legal precedent, this Court finds that both of Plaintiffs' claims are legally insufficient to survive Defendants' motion to dismiss for the reasons more fully explained below.

A. The Tortious Interference Claim

Plaintiffs allege that the various Defendant insurance companies tortiously interfered with Plaintiffs' business relationships with Defendants' insureds. This claim is without merit.

A clear principle underlying this well-established cause of action is that *the one who interferes* with the business relation, or contract, *must be a stranger* to that relationship or contract. See, e.g., Bryan; Childers Oil Co., Inc.; Cotton v. Otis Elevator Co.; Hatfield; and Gunder's Auto Center (recognizing that plaintiffs cannot succeed on tortious interference claims when the defendants were not strangers to the relationship or contract).

In their response, Plaintiffs argue that they are "unquestionably" outside the relationship or expectancy between Defendants and its [sic] policyholders . . . ." ECF No. 81 at 6. Plaintiffs misunderstand the law. In a case alleging tortious interference, it is the *defendant* who must be a stranger to the relationship. Within one sentence, Plaintiffs' own articulation of the facts, as similarly pled in their complaint, summarizes precisely

8

why this claim must fail as a matter of law.  See Bryan, 364 S.E.2d at 793 (finding tortious interference claim without merit because defendants were interfering with matters in which they had a business interest) and Gunders, 422 Fed. App'x at 822 (holding that because the insurance company was not a stranger to the business relationship between its insureds and the plaintiff repair shop, the plaintiff's complaint failed to state a claim).

B. The Antitrust Act Claim

Plaintiffs allege that Defendants conspired in violation of the West Virginia Antitrust Act to restrain trade and commerce by steering work to preferred contractors.  Although Plaintiffs' claim falls woefully short of the modest, required pleading standards, it cannot be salvaged even by way of liberal interpretation.  It also must fail.

After stripping the complaint of legal conclusions and naked assertions, little, if anything, remains in the five paragraphs dedicated to the antitrust claim.  The Fourth Circuit has explained that when a complaint "fails to allege particular facts against a particular defendant, then the defendant must be dismissed.  In other words, the complaint must 'specify how these defendants [were] involved in the alleged conspiracy,' without relying on 'indeterminate assertions' against all 'defendants.'"  SD3, LLC v. Black Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015) (quoting In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 905 (6th Cir. 2009)).

"A plaintiff in a § 1 case cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group.  At trial, a § 1 plaintiff will be required to make a 'factual showing that each defendant conspired in violation of the antitrust laws.'"  Id. (quoting AD/SAT, Div. of Skylight, Inc. v. Associated Press, 181 F.3d 216, 234 (2d Cir. 1999)).

Here, Plaintiffs have done exactly what the Fourth Circuit proscribes: filed a shotgun pleading that relies upon indeterminate assertions against all defendants without any specific facts regarding any particular defendants. Further, this Court finds the "scheme" described by Plaintiffs to be lacking any identifiable <u>antitrust</u> injury. Assuming *arguendo* that Plaintiffs' legal conclusions are actually facts, the scheme only describes economic harm to Plaintiffs. Nothing in the complaint adequately describes any injury to competition. In fact, it appears that Defendants have undertaken the sort of pro-competition business approach that courts have routinely upheld for a century.

This Court finds the Supreme Court's recent decision in the <u>American Express</u> case to be instructive here. In <u>American Express</u>, plaintiffs challenged antisteering provisions in the agreements between American Express and merchants. The Court held that the provisions had no anticompetitive effects. The same is true here. Assuming that a vertical restraint existed between a Defendant insurance company and other, unnamed, contractors who compete with Plaintiffs, there is no identifiable anticompetitive effect. In addition to completely failing to articulate an antitrust injury, Plaintiffs have not plead a relevant product or geographic market. Plaintiffs have grossly failed to allege the necessary elements of an antitrust violation.

Pursuant to decades of well-established legal precedent, "[d]ismissal of a 'bare bones' allegation of antitrust conspiracy without any supporting facts is appropriate . . . ." <u>Estate Const. Co.</u>, 14 F.3d at 220. Accordingly, Plaintiffs' amended complaint must be dismissed pursuant to Rule 12(b)(6) because it fails to state a claim.

## IV. Conclusion

For all the reasons stated more fully herein, Defendants' Motion to Dismiss [ECF No. 68] is hereby **GRANTED**. Therefore, Plaintiffs' Amended Complaint [ECF No. 53] is **DISMISSED WITH PREJUDICE**.

All remaining Motions to Dismiss [ECF Nos. 63, 65, & 71] are **DENIED** as **MOOT**.

The Clerk of Court is **DIRECTED** to enter a separate Judgment in favor of Defendants in accordance with Rule 58 of the Federal Rules of Civil Procedure. The Clerk is further **DIRECTED** to **STRIKE** this civil action from the Court's active docket.

Finally, the Clerk of Court is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED**: August 3, 2018

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE